**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BILLY WHITE,** *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 26-CV-3440** |
| | : | |
| **WILLIAM H. HIGHLAND III, *et al.*,** *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J. JULY 29, 2026

**MEMORANDUM**

Plaintiff Billy White, a pretrial detainee currently incarcerated at Montgomery County Correctional Facility and proceeding *pro se*, brings this civil action pursuant to 42 U.S.C. § 1983 against several prosecutors and police officers, the Limerick Township Chief of Police and police commissioner, and the CEO of Wawa. He seeks leave to proceed *in forma pauperis*. For the reasons set forth, White is granted leave to proceed *in forma pauperis*, the claims against the prosecutor defendants, the CEO of Wawa, and the commissioner of the Limerick Township Police Department ("LTPD") are dismissed, with prejudice. as well as the damages claims under the Pennsylvania Constitution, and claims based on the alleged failure to read White his *Miranda* rights. White's official capacity claims and Sixth Amendment claims will be dismissed without prejudice. Further, the Court will abstain from addressing the remainder of White's claims pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and the case will be stayed.

## I. FACTUAL ALLEGATIONS[1]

White's lengthy factual allegations are repetitive and frequently difficult to follow. Briefly, White alleges that the various Defendants violated his civil rights in connection with a vehicle stop and his subsequent arrest and prosecution in Montgomery County.[2] He asserts that on September 30, 2025 around 11:20 pm, he pulled into the parking lot of a Wawa store in Royersford, Pennsylvania, and parked next to Defendant Shane Johnston, a police officer with the Limerick Township Police Department ("LTPD"). (Compl. at 6, 18.) He asserts that he and Johnston had interacted on several prior occasions. (*Id*. at 20-21.) White alleges that Johnston "park[ed] or block[ed [his] vehicle" in the Wawa lot, then "drove off and circled back and blocked [White] once again and [then] repeated this act about two more times then disappeared[.]" (*Id*. at 19.) He claims that Johnston was "stalking and profiling [White], waiting for some sort of violation or crime to occur." (*Id.*) Sometime later, Johnston followed White as he drove out of the Wawa parking lot and stopped him for an alleged tinted car windows violation. (*Id*. at 11, 19-20.)

To the extent discernible, White alleges that Johnson turned the stop into a drug investigation after seeing a "roach marijuana clip" in the car. (*Id*. at 8.) White alleges that any drugs found by police was medical marijuana that he was legally permitted to possess. (*Id.*) He

---

[1] The facts set forth in this Memorandum are taken from White's Complaint (ECF No. 2), which consists of the Court's form complaint for use by *pro se* litigants, along with several handwritten pages. The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system. The Court may also consider matters of public record when conducting a screening under § 1915. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up as needed.

[2] The Complaint identifies the following individuals as Defendants: (1) Assistant District Attorney ("ADA") William Highland, III; (2) ADA Abigail Jean Morris; (3) Limerick Township Chief of Police Robert Matalavage; (4) Officer Shane Johnston; (5) Officer Zachary Steiger; (6) Officer Robert Giantonia; (7) ADA Hannah Victor; (8) Commissioner of Limerick Township Police Department; and (9) the CEO of Wawa. (Compl. at 2-5.)

was asked to complete field sobriety tests despite not smelling of marijuana and was eventually permitted to leave the scene, but officers seized White's car and property without obtaining a warrant or providing him property receipts, citing "allegedly a marijuana cigar near the ash tray." (*Id*. at 7, 9, 18.)

Officer Robert Giantonio "was the first officer on the scene to witness the whole encounter," but White avers that his "role was very minimal." (*Id*. at 20.) White alleges that Giantonio "[saw] a small foldable knife attached to [White's] keychain . . . and . . . [he] seized the knife while Officer Johnston conducted his illegal investigation." (*Id*.) White also alleges that Giantonio "never mention[ed] anything about the smell of . . . marijuana [during the stop], but he presented it to his superiors in written affidavits . . . which is [a] false statement[.]" (*Id*.) White also asserts that Sergeant Edward Ciacak "assisted with the call on September 30, 2025 . . . [and] supervised and assess[ed] the scene[,] knowing they were out of their jurisdiction, mak[ing] Sergeant Edward Ciacak very much complicit with the unconstitutional procedures" involved in the investigation. (*Id*. at 21-22.)

White alleges that Officer Zachary Steiger "was a witness to the events that took place but had minimum at the scene [involvement] on September 30, 2025, and was more involved with the illegal search of [White's] vehicle when assisting Officer Johnston on October 3, 2025." (*Id*.) White also asserts that Steiger made false statements to his superiors and in his investigative report by averring that the September 30, 2025 incident took place in Limerick rather than in Royersford. (*Id*.) White alleges that Defendants Johnston and Steiger conducted a search of White's vehicle on October 3, 2025 under the supervision of Defendant Ciaciak. (*Id*. at 12.) White also alleges that Corporal James Reilly:

> . . . put 9345 Township Line Rd Limerick PA on all his investigative reports and they were signed and approved by Edward Ciacak, the

> sergeant, which is fraud, and on 10/14/2025 Corporal Reilly made false allegations that the plaintiff gave him a false name by providing officer or corporal Reilly with the name of Billy Whites which was a total lie and an unsworn falsified [statement] to authorities under 4904.

(*Id*. at 12-13.)

White was subsequently charged in the Montgomery County Court of Common Pleas with various drug and vehicle offenses.[3] On October 13, 2025, Defendant Johnston "contacted [White] about picking up his vehicle . . . and explained Limerick [Township] procedure about accruing storage fees . . . but didn't advise [White] of the alleged charges that he filed on [White or] advise [White as] to his rights to an attorney[.]" (*Id*. at 14.)

White asserts that he was "place[d] at the Montgomery County Correctional Facility on 10/14/25 [where he was] fingerprinted, process[ed] [and] booked" but "did not receive an arraignment for bail at all from any magistrate judge." (*Id*.) He asserts that "[t]he Magistrate Judge that was responsible for these constitutional violation[s] is Juanita Price."[4] He subsequently appeared for a preliminary hearing on December 8, 2025 before Magisterial District Judge Richard Welsh. (*Id*.) The prosecutor was Defendant Abigail Jean Morris and White's appointed counsel was Miranda Skurla of the Montgomery County Public Defender's Office. (*Id*.) White asserts

---

[3] The publicly available dockets in *Commonwealth v. White*, MJ-46-CR-0006323-2025 (M.J. Montgomery) and *Commonwealth v. White*, CP-46-CR-0006323-2025 (C.P. Montgomery), reflect that on October 4, 2025, White was charged with offenses including possession of marijuana; use/possession of drug paraphernalia; manufacture, delivery, or possession of a controlled substance with intent to manufacture or deliver; and operating a vehicle with unsafe equipment. The case is currently pending an interlocutory appeal to the Superior Court of Pennsylvania. *See Commonwealth v. White*, 1230 EDA 2026 (Pa. Super. Ct.).

[4] Judge Price is not named as a defendant in this action. The public docket for White's pending case reflects that on October 14, 2025 Magisterial District Judge Juanita A. Price set bail at $77, but White was unable to post bail. *See Commonwealth v. White,* MJ-46-CR-0006323-2025. On December 11, 2025, White waived arraignment on the charges. *See Commonwealth v. White*, CP-46-CR-0006323-2025.

that "Skurla was advised by the Plaintiff about the incident tak[ing] place outside of Limerick's primary jurisdiction but failed to raise [this as a defense.]" (*Id*. at 14-15.) He alleges that "District Attorney Abigail Jean Morris malicious[ly] attempt[ed] to cover up the fact that the whole incident was outside Limerick's jurisdiction by leading Officer Johnston by saying the incident took place in Montgomery County . . . ." (*Id*. at 15.) White asserts that "[t]here is a recording of this preliminary hearing and William Highland III reviewed all evidence in this matter because he is still going forward with all charges."[5]

White avers that on March 16, 2026, Judge Thomas DelRicci held a "*habeas corpus* hearing" where Defendant Hannah Victor of the DAO represented the Commonwealth. (*Id*.) He alleges that Victor "is complicit with malice intent to cover up once again the reasoning why Officer Johnston's reason for illegally seizing the Plaintiff's vehicle without probable cause and exigent circumstances." (*Id*. at 15.) White appears to allege that Victor elicited misleading testimony from Officer Johnston regarding the reasons for the stop. (*Id*. at 16.) He also alleges she failed to provide photos of the "roach cigar" that caused Johnston to initiate a drug investigation, which he contends represents a *Brady* violation.[6] (*Id*.)

White also contends that Limerick Township Chief of Police Robert Matalavage was involved in the violation of his rights. He asserts that Matalavage authorized a search of White's vehicle before receiving a lab report regarding the drugs found in White's car, which indicated

---

[5] The public docket in White's case reflects that Highland has been the assigned prosecutor in White's case since December 2025. *Commonwealth v. White*, CP-46-CR-0006323-2025. The Complaint identifies Highland as "Assistant District Attorney Captain of Narcotic." (Compl. at 4.) The website of the Montgomery County District Attorney's Office ("DAO") indicates that Highland is the Unit Captain of the Office's Narcotics Unit. *See* http://www.montgomerycountypa.gov/departments/district-attorney/about-our-office/leadership/other-leadership (last viewed: July 24, 2026.)

[6] *Brady v. Maryland*, 373 U.S. 83 (1963).

"Pharmaceutical Use Identification only and inconclusive" which White describes as, "not really knowing if it's hemp or marijuana because of the low purity." (*Id*. at 16.). White contends that Matalavage, "should have waited until the final result of the lab report before authorizing the unconstitutional tainted search of the Plaintiff's vehicle." (*Id*. at 17.)

Based on these allegations, White asserts claims under Article I, §§ 8, 9, 13, 26, and 29 of the Pennsylvania Constitution; 18 Pa. Cons. Stat. § 4904, and "8953";[7] he alleges unlawful seizure, false detention, false arrest, and false imprisonment; and violation of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution. (*Id*. at 3.) He also asserts in passing that "the unconstitutionally vague statute 4701b(2) was the reason or smoke screen" for his traffic stop.[8]

---

[7] 18 Pa. Cons. Stat. § 4904, *inter alia*, makes it a misdemeanor for anyone, "with intent to mislead a public servant in performing his official function, to make any written false statement which he does not believe to be true." 18 Pa. Cons. Stat. § 4904(a).

Based on the context of the Complaint, the Court infers that White's citation to "8953" is a reference to 42 Pa. Cons. Stat. § 8953 (also known as the Municipal Police Jurisdiction Act), which provides that in certain enumerated circumstances:

> [a]ny duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction[.]

[8] The Court infers based on the context of the Complaint that White is referring to 75 Pa. Cons. Stat. § 4701(b)(2), which he was charged with violating in *Commonwealth v. White*, CP-46-CR-0006323-2025. The statute provides that:

> it is unlawful for any person to . . . Operate, or cause or permit another person to operate, on any highway in this Commonwealth any vehicle or combination which is not equipped as required under this part or under department regulations or when the driver is in violation of department regulations or the vehicle or combination is otherwise in an unsafe condition or in violation of department regulations.

As relief for his claims, White seeks that the Court "to assign a team of attorneys to adequately investigate my claims civilly and or criminally against those who violated my constitutional rights so my case can be stronger in a court of law[.]" (*Id.* at 18.) He further seeks $2.5 million in punitive damages and potential criminal charges against those involved in his case.[9] (*Id.*) He also seeks compensation for lost income and unspecified business opportunities. (*Id.*)

## II. STANDARD OF REVIEW

The Court will grant White leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[10] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires a court to dismiss the complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). Here, at this favor early stage of the litigation, the Court will accept the facts alleged in the *pro se* Amended Complaint as true, draw all reasonable

---

To the extent that White alleges a facial challenge to the statute on vagueness grounds, any such claim is entirely undeveloped.

[9] To the extent that White seeks to initiate criminal charges against any Defendant, the Court has no authority to order such relief. *See Kent v. Ed Carber Inc.*, 467 F. App'x 112, 113 (3d Cir. 2012) (*per curiam*) (affirming dismissal of claims seeking initiation of criminal charges because "a private person does not have a 'judicially cognizable interest in the prosecution . . . of another'") (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

[10] Because White is incarcerated, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b). Although White did not provide a formal copy of his trust account statement, (*see* ECF No. 3), the document he provided indicates the credits and debits to his trust account during the relevant time period and the Court deems it in substantial compliance with 28 U.S.C. § 1915(a)(2).

inferences in White's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because White is proceeding *pro se*, the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations . . . this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III. DISCUSSION

The method by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer,* 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983); *see also Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (explaining § 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." (quoting *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979))). To state a claim under § 1983, a plaintiff must demonstrate "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the

complained of injury." *Karns v. Shanahan,* 879 F.3d 504, 520 (3d Cir. 2018) (quoting *Elmore,* 399 F.3d at 281); *see also Halsey,* 750 F.3d at 290 ("To state a claim under section 1983, a plaintiff must demonstrate that 'some person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law.'" (quoting *Gomez v. Toledo,* 446 U.S. 635, 640 (1980))).

### *A. Claims Under the Pennsylvania Constitution*

White's Complaint purports to bring claims for money damages under several sections of the Pennsylvania Constitution. However, "Pennsylvania does not recognize a private right of action for damages in a lawsuit alleging a violation of the Pennsylvania Constitution." *Moss v. Pennsylvania*, 838 F. App'x. 702, 708 (3d Cir. 2020) (*per curiam*) (citing *Jones v. City of Philadelphia*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("[N]either Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution.")). *See also Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*) ("Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution."); *Spriggs v. Salamon*, No. 23-1756 , 2024 WL 5239879, at *6 (E.D. Pa. Dec. 27, 2024) (same, collecting non-precedential decisions of the United States Court of Appeals for the Third Circuit). As there is no private right of action for damages under the Pennsylvania Constitution, these claims are not plausible. *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"). Accordingly, any damages claims under the Pennsylvania Constitution are dismissed with prejudice.

***B. Official Capacity Claims***

In drafting his Complaint, White checked boxes indicating that he seeks to name all Defendants except for Officer Giantonio and the CEO of Wawa in their individual and official capacities. (*See* Compl. at 2-5.) White appears not to have understood the implication of checking the official capacity box. Claims against municipal employees named in their official capacity are indistinguishable from claims against the governmental entity that employs them. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). White fails to allege that he suffered a constitutional violation due to a policy or custom of either Limerick Township, Montgomery County, or the DAO. Accordingly, his official capacity claims against the Defendants are not plausible and must be dismissed without prejudice.

***C. Lack of Personal Involvement***

White names the CEO of Wawa and the Commissioner of the Limerick Township Police Department as Defendants, however neither is discussed in the factual allegations of the Complaint. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also*

*Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Other than naming the Commissioner and the CEO of Wawa as Defendants, White provides no allegations to indicate that they were personally involved in violating his rights. Moreover, the website for Limerick Township lists a chief of police but includes no reference to a commissioner of the LTPD, thus White appears to be suing a non-existent defendant. *See* http://www.limerickpa.org/directory.aspx?did=11 (last viewed: July 24, 2026).

Further, there are no allegations in the Complaint suggesting that the CEO of Wawa acted under color of state law such that he would be liable to suit under § 1983.[11] Accordingly, the claims against these two Defendants are dismissed. *See Thomas v. McGinley*, No. 20-2454, 2021

[11] "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). Whether a defendant is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such 'a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotation marks omitted). Here, there are no facts describing the actions of the CEO of Wawa and therefore no plausible allegation that he acted in such close coordination with government officials that he should be deemed a state actor.

WL 4478224, at *2 (M.D. Pa. Sept. 30, 2021) (dismissing claims against defendants because plaintiff "makes no allegations as to how the named defendants were personally involved in the alleged violation of his rights."); *see Credico v. Guthrie*, 570 F. App'x 169, 171 (3d Cir. June 25, 2014) (*per curiam*) (affirming dismissal of § 1983 claim against CEO because plaintiff "did not set forth allegations that would allow for the conclusion that the CEO . . . was a state actor.").

***D. Claims Against Prosecutors***

White sues three attorneys from the DAO who were involved with his ongoing criminal prosecution. Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Absolute immunity extends to the decision to initiate a prosecution, *Imbler*, 424 U.S. at 431, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence. *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020). *See also id.* at 164 (3d Cir. 2020) (prosecutors were entitled to immunity from claims based on allegations "that at hearings and at trial the Prosecutors withheld material exculpatory evidence from defense counsel, the court, and the jury; filed a criminal complaint without probable cause; and committed perjury before and during trial"). Moreover, District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009).

Absolute immunity can extend to "the duties of the prosecutor . . . involv[ing] actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Mancini v.*

*Lester*, 630 F.2d 990, 994 n.6 (3d Cir. 1980) (quoting *Imbler*, 424 U.S. at 431 n.33). This means prosecutors have absolute immunity from suits challenging their preliminary "strategic decisions," such as whether or not to call a witness, or their decision not to prosecute a case. *Harris v. Krasner*, No. 23-2068, 2024 WL 2861848, at *2 (3d Cir. June 6, 2024), publication ordered, No. 23-2068, 2024 WL 3493020 (3d Cir. July 22, 2024).

White alleges that Morris, "malicious[ly] attempt[ed] [to] cover up the fact that the whole incident was outside Limerick's jurisdiction by leading officer Johnston by saying the incident took place in Montgomery County on direct examination[.]" (Compl. at 14-15.) Morris is not otherwise discussed in the Complaint. The actions giving rise to White's claims against Morris are based on her conduct during the judicial phase of his criminal prosecution, specifically, eliciting testimony from a witness, which White contends was false or misleading. This conduct, even if White alleges it was unethical, is nevertheless entitled to prosecutorial immunity. *See Imbler*, 424 U.S. at 430-31; *see also Kulwicki*, 969 F.2d at 1465 (noting that prosecutorial immunity extends to "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings"). Accordingly, the § 1983 claims against Morris will be dismissed.

The claims against Defendant Victor are likewise based on her advocacy on behalf of the Commonwealth during the judicial phase of the criminal process, specifically the March 18, 2026 hearing on White's petition for a writ of *habeas corpus*. (Compl. at 15.) White alleges that she was "complicit with the malice [and had the] intent to cover up once again the reasoning why officer Johnston . . . illegally seiz[ed] the plaintiff's vehicle without probable cause [or] exigent circumstances." (Compl. at 15.) White's allegations against Victor are somewhat difficult to parse; it is unclear what he alleges Victor did to be "complicit" or "cover up" wrongdoing by Officer Johnston. But it is clear that his allegations are based on Victor's actions during a hearing

on a motion in his criminal case, in which she was "functioning as the state's advocate" and therefore entitled to prosecutorial immunity. *See Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008); *see also Imbler*, 424 U.S. at 430-31. White also alleges that Victor failed to turn over photographs of the evidence against him, in violation of *Brady*. However, even assuming the material White describes was exculpatory, "[i]t is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity."[12] *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006). Accordingly, the § 1983 claims against Victor are barred by prosecutorial immunity and will be dismissed with prejudice.

Finally, White names as a defendant William Highland III, the assigned prosecutor and supervisor of the County DA's Office Narcotics Unit. Highland is only discussed once in the factual allegations of the Complaint. White asserts he "[r]eviewed all evidence in this matter because he is still going forward with all charges." (Compl. at 15.) To the extent White alleges Highland decided to pursue the charges against him despite what he contends is exculpatory evidence, Highland is nevertheless entitled to immunity because "continu[ing] to prosecute [a] case when [it] should have been dismissed . . . [are] acts . . . intimately associated with the judicial process" and protected by "absolute[ ] immunity from suit." *Hoffman v. Warren Cnty. Prosecutor's Off.*, No. 23-0561, 2023 WL 8271806, at *6 (D.N.J. Nov. 30, 2023) (quoting *Hinton v. Dennis*, 362 F. App'x 904, 907 (10th Cir. 2010)). The § 1983 claims against Defendant Highland will therefore be dismissed.

---

[12] White also refers vaguely to Wawa surveillance footage "which is exculpatory and impeaching evidence" that "was never requested by the District Attorney's office," violating his due process rights. (Compl. at 7.) He does not describe the nature of the surveillance footage or why it would be exculpatory, and thus any claim based on these vague allegations is additionally not plausible because it is undeveloped.

### *E. Fifth Amendment Claim*

White appears to assert a Fifth Amendment claim based on the arresting officers' failure to provide *Miranda* warnings during the September 30, 2025 traffic stop. (Compl. at 12-13); *see Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (holding that when engaging in custodial interrogation, police officers must inform suspect that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning, if he so desires."). This claim must be dismissed with prejudice because the United States Supreme Court has held that *Miranda* violations do not "provide[] a basis for a claim under § 1983." *Vega v. Tekoh*, 597 U.S. 134, 141 (2022); *see also id*. at 152 (reasoning that "a violation of *Miranda* is not itself a violation of the Fifth Amendment" and finding "no justification for expanding *Miranda* to confer a right to sue under § 1983"); *see also Bey v. Amoroso*, No. 24-1786, 2024 WL 5096210, at *3 (E.D. Pa. Dec. 12, 2024) (dismissing with prejudice upon statutory screening *pro se* litigant's Fifth Amendment claim arising from alleged failure to provide *Miranda* warnings, citing *Vega*).

### *F. Sixth Amendment Claims*

The Court understands White to allege that Defendant Johnston violated his Sixth Amendment right to formal notice of the charges against him when Johnston called him on October 13, 2025 about storage fees for his impounded vehicle without mentioning the criminal charges filed against him. (Compl. at 14.) The Sixth Amendment provides in relevant part that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ." U.S. Const. amend. VI; *see also United States v. Thomas*, 610 F.2d 1166, 1173 (3d Cir. 1979) ("[T]he Sixth Amendment guarantees that criminal defendants be given

sufficient notice of the nature of the charges in order to defend against them.") This includes the right to "be notified of the charges against him through a recitation of the elements of the offense and a description of the charges in sufficient detail to allow the defendant to maintain that future charges which relate to the same conduct are precluded by a previous conviction or acquittal." *United States v. Solomon*, 513 F. Supp. 2d 520, 528 (W.D. Pa. 2007), citing *Hamling v. United States,* 418 U.S. 87, 117 (1974) ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.") (citation and internal quotation marks omitted). White's Sixth Amendment claim is not plausible. He makes no allegation that he never received notice of the charges against him or that the charging instrument filed in the Montgomery County Court of Common Pleas was deficient. To the extent he asserts a Sixth Amendment claim based on a delay in receiving notice of the charges, absent any allegation that he was harmed by the delay, White fails to state a constitutional claim. *See Hiley v. Skinner*, No. 21-4179, 2022 WL 604187, at *5 (W.D. La. Feb. 8, 2022) (recommending dismissal of Sixth Amendment charges against police officer who did not immediately inform plaintiff of charges against him because, *inter alia*, the "Plaintiff does not allege that the delay caused him any harm."), *report and recommendation adopted*, No. 21-4179, 2022 WL 602190 (W.D. La. Feb. 28, 2022); *see also id*. at *4 (noting that "it is not incumbent on an arresting officer" to notify an arrestee of the charges against him. "[R]ather, the right is customarily fulfilled later at an arraignment."). Without more, the allegation that Defendant Johnston did not inform White of pending criminal charges during a courtesy phone

call regarding his impounded vehicle does not plausibly allege that White's Sixth Amendment rights were violated. The claim will therefore be dismissed.[13]

### *G. Claims Against Police Officers and Supervisory Officers*

White asserts federal constitutional claims against the police officers and supervisory officers involved in the September 30, 2025 traffic stop, the October 3, 2025 search of his vehicle, and his arrest on October 14, 2025. In *Younger*, 401 U.S. 37, the United States Supreme Court "established a principle of abstention when federal adjudication would disrupt an ongoing state criminal proceeding." *Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005) (discussing *Younger*). Pursuant to *Younger*, this Court has an obligation to abstain from considering cases where to do so "would interfere with certain ongoing state proceedings." *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 461 (3d Cir. 2019) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77-78 (2013)). When assessing whether the *Younger* abstention is appropriate, the Court proceeds in two sequential stages. *Greco v. Bruck*, No. 21-1035, 2022 WL 1515375, at *2 (3d Cir. May 13, 2022). At the first stage, the Court must examine the underlying state court litigation to determine whether it falls into one of three categories of cases: (1) criminal prosecutions, (2) quasi-criminal state civil enforcement proceedings, and (3) civil proceedings involving orders in furtherance of the state courts' judicial function. *See PDX N., Inc. v. Comm'r N.J. Dep't of Labor & Workforce Dev.*, 978

[13] White makes other passing references to the Sixth Amendment, but these allegations are entirely undeveloped. (*See, e.g.*, Compl. at 10) ("[T]he Prosecution is an accomplice and complicit with all constitutional violation[s] stated in this section of false detention, false arrest, false imprisonment, without cause or probably cause reasoning violating the Plaintiff['s] Constitutional rights under Pa. Cons. Art I [§§] 8, 9, 13, 26, 29 and under U.S. Cons. 4th, 5th, 6th, 8th, 14th[.]") Passing references to legal provisions are insufficient to bring a plausible claim before the Court. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) ("A passing reference to an issue will not suffice to bring that issue before this court.") (cleaned up) (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)). White's passing reference to the Eighth Amendment and "a legal proceeding causing cruel and unwanted punishment," (Compl. at 10), is likewise entirely undeveloped and does not state a plausible claim.

F.3d 871, 882 (3d Cir. 2020) (internal quotations omitted). Because White's criminal prosecution is the underlying state court litigation here, the first stage of the analysis is met.

At the second stage, courts consider three factors articulated by the Supreme Court in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Assoc.*, 475 U.S. 434, 432 (1982),[14] whether: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; and (3) there is an adequate opportunity to raise constitutional challenges in the state proceeding. *See PDX N., Inc.,* 978 F.3d at 883. Each of these factors is satisfied. First, publicly available dockets reflect that there is an ongoing criminal prosecution in the Court of Common Pleas of Montgomery County. Second, the state proceedings implicate the important interest of enforcing the Commonwealth's criminal laws. Third, White has an opportunity to raise his constitutional challenges to the validity of the traffic stop, the search and seizure of his vehicle, and the legality of the charges filed against him in the state proceedings. *See Jaffery v. Atl. Cnty. Prosecutor's Office*, 695 F. App'x 38, 40-41 (3d Cir. 2017) (*Younger* applied where "[t]here are ongoing state criminal proceedings in the Superior Court of New Jersey that are judicial in nature, the state proceedings implicate the important state interest in prosecuting criminal behavior, and the state proceedings provide Jaffery an opportunity to raise federal constitutional defenses to prosecution"); *Lazaridis v. Wehmer*, 591 F.3d 666, 670-71 (3d Cir. 2010) (*per curiam*) (explaining that *Younger* requires only an opportunity to present federal claims in state court, and the burden rests with plaintiff to show that state procedural law bars presentation of the claims). Further, White has not alleged, nor is there anything in the Complaint to suggest, that his claims fall within

---

[14] The United States Court of Appeals for the Third Circuit has noted that when the state court proceeding is quasi-criminal, the *Middlesex* factors must be met, but when the state-court proceedings are criminal, it is not necessary to consider the *Middlesex* factors. *See Samaritano v. New Jersey*, No. 24-1889, 2025 WL 1554932, at *2 n.1 (3d Cir. June 2, 2025). In an abundance of caution, the Court will nonetheless consider the *Middlesex* factors.

any of the narrow exceptions to the *Younger* doctrine. *See Stagliano v. Coll*, No. 22-2691, 2023 WL 3943732, at *4 (3d Cir. June 12, 2023) (*per curiam*) (affirming application of *Younger* doctrine where plaintiff failed to plausibly plead that the state criminal proceedings were being undertaken in bad faith or for purposes of harassment, or some other extraordinary circumstances existed (citing *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989)).

Since the state criminal proceeding affords White an opportunity to raise his constitutional challenges, and since the remaining claims raised in the instant civil action against the LTPD Defendants appear to implicate rulings that will likely be made in the state proceeding, the Court is required to stay them until the criminal proceeding has resolved.[15] *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) ("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended."); *Rex v. Fisher*, No. 12-4045, 2012 WL 3537846, at *2 (E.D. Pa. Aug. 15, 2012) (staying false arrest and illegal search claims for damages in light of pending criminal prosecution when plaintiff "ha[d] the opportunity to raise his Fourth-Amendment challenges in the course of his criminal proceeding."); *Zimmerman v. Leek*, No. 23-220, 2024 WL 3695334, at *3 (W.D. Pa. July 18, 2024), *report and recommendation adopted*, 2024 WL 3691889 (W.D. Pa. Aug. 7, 2024) (holding that, because he was still awaiting trial on underlying arrest, plaintiff's false arrest, false imprisonment, illegal search and seizure, and malicious prosecution claims were subject to *Younger*).

---

[15] In the future, when the *Younger* stay is lifted, the Court may conduct additional screening of the remaining claims in the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(i)-(iii). *See id.* (providing that "the court shall dismiss the case at any time if the court determines" that the Complaint is frivolous, fails to state a claim on which relief may be granted, or seeks damages from an immune defendant).

## IV. CONCLUSION

For the reasons set forth, White is granted leave to proceed *in forma pauperis*. His claims against Defendants Morris, Victor, Highland, the CEO of Wawa, and the Commissioner of the LTPD, and any damages claims under the Pennsylvania Constitution or claims based on alleged failure to read White his *Miranda* rights are dismissed, with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). White's Sixth Amendment claim and official capacity claims against Defendants Johnston, Steiger, Ciaciak, Reilly, and Matalavage are dismissed, without prejudice. The Court will abstain from addressing the remainder of White's claims pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and the case will be stayed. White may move to reopen this action following the resolution of his criminal case. An appropriate Order follows.

*NITZA I. QUIÑONES ALEJANDRO, J.*